# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SUZANNE M. LEWIS,**

        **Plaintiff,**

**v.**                                   **Case No:   6:19-cv-909-Orl-31LRH**

**ABBOTT LABORATORIES, INC., ST.
JUDE MEDICAL, LLC and
GREATBATCH LTD.,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **GREATBATCH LTD.'S DISPOSITIVE MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (Doc. No. 71)** |
| **FILED:** | **December 9, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED ALTERNATIVE MOTION TO SEVER DEFENDANT GREATBATCH LTD. AND TRANSFER PLAINTIFFS' CLAIMS AGAINST DEFENDANT GREATBATCH LTD. TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK WITH INCORPORATED MEMORANDUM OF LAW (Doc. No. 75)** |

**FILED:**          **December 23, 2019**

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.     BACKGROUND.

On April 16, 2019, Suzanne M. Lewis ("Plaintiff"), individually and as the personal representative of the estate of Richard E. Lewis,[1] filed this action in state court.   Doc. No. 1- 1. On May 13, 2019, Defendants St. Jude Medical LLC ("St. Jude") and Abbott Laboratories, Inc. ("Abbott") removed the matter to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.   Doc. No. 1.   Plaintiff has since twice amended the complaint.   Doc. Nos. 21, 35.   The named Defendants in the second amended complaint include St. Jude, Abbott, and Greatbatch, Ltd. ("Greatbatch.").   Doc. No. 35.

In the second amended complaint, Plaintiff, as personal representative of the Estate of Richard Lewis and in her individual capacity, brings claims under the Florida Wrongful Death Act, Fla. Stat. §§ 768.16–768.26, based on the death of Richard Lewis allegedly caused by a defective product—the Unify Quadra® 3249-40 cardiac resynchronization therapy defibrillator, serial number 833578.   Doc. No. 35 ¶ 1.   Plaintiff asserts claims of strict liability, negligence, intentional misrepresentation, negligent misrepresentation, and loss of consortium against both St. Jude and Abbott (Counts I–VIII and XI–XII), and claims of strict liability, negligence, and loss of consortium against Greatbatch (Counts IX, X, and XIII).     *Id.* at 30–44.

Abbott and St. Jude filed a joint motion to dismiss the second amended complaint for failure to state a claim; Greatbatch also filed a motion to dismiss for lack of personal jurisdiction and for

---

[1] Richard Lewis, the decedent, was Plaintiff Suzanne M. Lewis's spouse.   *See* Doc. No. 1-1 ¶ 7, Doc. No. 35 ¶ 7.

failure to state a claim.   Doc. Nos. 41, 47.   Plaintiff responded in opposition to both motions, and she also filed an alternative motion to sever Greatbatch from the case and to transfer her claims against Greatbatch to the United States District Court for the Western District of New York, Buffalo Division.   Doc. Nos. 49, 55, 56.   The parties' motions were denied as moot based on their joint request to stay the case pending the outcome of mediation, which was granted.   Doc. Nos. 64–65. The Court ordered that if the case was not settled, the parties could refile their motions.   Doc. No. 65.   Mediation thereafter resulted in an impasse.   Doc. No. 66.

On December 9, 2019, St. Jude and Abbott refiled their motion to dismiss for failure to state a claim.   Doc. No. 68.   That motion remains pending before the presiding District Judge and is not a subject of this Report and Recommendation.

On the same day, Greatbatch also refiled its motion to dismiss, arguing that this Court lacks personal jurisdiction over it, and alternatively, that the second amended complaint fails to state a claim.   Doc. No. 71.   In support, Greatbatch filed the declaration of Tom Thomas, Vice President, Corporate Controller, and principal accounting officer for Integer Holdings Corporation and its subsidiaries, which includes Greatbatch.   Doc. No. 71-1.   Plaintiff filed a response in opposition to Greatbatch's motion.   Doc. No. 74.   Plaintiff also refiled her alternative motion to sever Greatbatch from this case and to transfer her claims against Greatbatch to the United States District Court for the Western District of New York, Buffalo Division.   Doc. No. 75.   Greatbatch opposes the motion to sever.   Doc. No. 76.[2]   Greatbatch's motion to dismiss and Plaintiff's motion to sever were both referred to the undersigned, and the matters are ripe for review.

---

[2] Greatbatch requests oral argument in support of its response to the motion to sever and in support of its motion to dismiss.   Doc. No. 77.   However, the undersigned determined that oral argument was unnecessary for resolution of the motions.

As discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Court grant in part Greatbatch's motion to dismiss based on lack of personal jurisdiction.  *See* Doc. No. 71. Based on the lack of personal jurisdiction over Greatbatch, the Court need not address Greatbatch's remaining contention that the second amended complaint fails to state a claim against Greatbatch. It is further **RECOMMENDED**, however, that the Court grant Plaintiff's motion to sever and to transfer the claims against Greatbatch to the Western District of New York.  *See* Doc. No. 75.

## II.    RELEVANT ALLEGATIONS OF THE SECOND AMENDED COMPLAINT.[3]

The allegations of the second amended complaint stem from the alleged wrongful death of Richard E. Lewis caused by a defective and recalled Unify Quadra® 3249-40 ("Unify Quadra"), which is a cardiac resynchronization therapy defibrillator.  Doc. No. 35 ¶¶ 1, 30.  The Unify Quadra "is designed to be implanted into a patient's chest cavity near the heart to correct irregular heart rhythms that could lead to sudden cardiac death."  *Id.* ¶ 31.  The Unify Quadra utilizes a lithium-ion battery to power its pulse generator.  *Id.* ¶ 36.

The Unify Quadra is classified by the United States Food and Drug Administration ("FDA") as a Class III medical device.  *Id.* ¶ 38.  Plaintiff alleges that the Unify Quadra suffered from a manufacturing defect that caused the device's lithium-ion battery to lose its charge unknowingly and prematurely, which resulted in a device that failed to operate when needed.  *Id.* ¶ 2.

St. Jude Medical, Inc.[4] manufactured a variety of medical devices, including implantable cardioverter-defibrillators, cardiac resynchronization therapy pacemakers, and cardiac

---

[3] At the motion to dismiss stage, courts must assume "that all the [factual] allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Because this Report and Recommendation addresses only Greatbatch's motion to dismiss (Doc. No. 71) and Plaintiff's motion to sever/transfer (Doc. No. 75), the undersigned has confined discussion of the facts to those relevant to these motions.

[4] "St. Jude Medical Inc." is not a party to this lawsuit, and is a separate entity from "St. Jude Medical, LLC," which is a party to these proceedings and is referred to throughout solely as "St. Jude."

resynchronization therapy defibrillators. *Id.* ¶ 30.    Abbott is a de facto successor to St. Jude Medical, Inc.; St. Jude Medical, Inc. has ceased all operations and Abbott has effected an uninterrupted continuation of St. Jude Medical, Inc.'s business. *Id.* ¶¶ 26, 29.    St. Jude is a wholly owned subsidiary of Abbott. *Id.* ¶ 26.[5]  "Greatbatch is a medical device outsource manufacturer that is engaged in the business of designing, manufacturing, assembling, testing, inspecting, supplying, and/or distributing component parts for medical devices, including lithium-ion batteries for implantable cardiac pacemakers and defibrillators." *Id.* ¶ 21.  While Abbott and St. Jude are allegedly responsible for the design, manufacture, assembly, testing, inspection, marketing, promotion, distribution, and/or sale of the Unify Quadra, Plaintiff alleges that Greatbatch is responsible for the same for the Unify Quadra's lithium-ion battery "and otherwise supplying the Subject Unify Quadra Device's lithium-ion battery to Abbott and/or St. Jude." *Id.* ¶¶ 44–46.

The subject Unify Quadra was implanted in Mr. Lewis on August 7, 2012. *Id.* ¶ 47.   On May 16, 2017, Mr. Lewis suffered a cardiac event while he was driving his vehicle. *Id.* ¶ 48. Plaintiff alleges that the Unify Quadra failed to operate, which caused Mr. Lewis to pass out and crash the vehicle. *Id.* ¶¶ 49, 55.   Mr. Lewis passed away at the hospital during a surgery to replace the Unify Quadra. *Id.* ¶ 57.   At the hospital, "[i]t was discovered that the Subject Unify Quadra Device was recalled due to a defect in the . . . lithium-ion battery that rendered the Subject Unify Quadra Device inoperable." *Id.* ¶ 52.   St. Jude Medical, Inc. issued a Class I recall on October 10, 2016, recalling over 250,000 implantable cardiac pacemakers and defibrillators, which included the Unify Quadra at issue. *Id.* ¶ 63.

---

[5]  In the notice of removal, Defendants further explained that "Abbott Laboratories acquired St. Jude Medical, Inc. on January 7, 2017, and on that date, St. Jude Medical, Inc. became known as St. Jude Medical, LLC." Doc. No. 1, at 1 n.1.

Plaintiff alleges that Greatbatch manufactured and supplied the lithium-ion batteries in all of the recalled devices. *Id.* ¶ 70. Greatbatch informed St. Jude Medical, Inc. about the lithium-ion battery defect in 2011. *Id.* ¶ 72. St. Jude Medical, Inc. did not inform the FDA about the defect until 2016. *Id.* ¶ 75. Abbott knew about the lithium-ion battery defect in the recalled devices. *Id.* ¶ 76. However, neither Abbott, St. Jude, nor Greatbatch warned consumers regarding the defective product. *Id.* ¶¶ 77–78.

Regarding personal jurisdiction over Greatbatch, Plaintiff alleges that Greatbatch is a New York corporation with its principal place of business in New York, and that Greatbatch is not registered or authorized to conduct business in Florida. *Id.* ¶¶ 19–20. Plaintiff alleges:

> This Court is authorized to exercise personal jurisdiction over Greatbatch pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the causes of action stated herein arise out of Greatbatch:
>
> > a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;
> >
> > b. Committing a tortious act within Florida; or
> >
> > c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Greatbatch was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by Greatbatch anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.
>
> This Court is authorized to exercise personal jurisdiction over Greatbatch pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(2), because Greatbatch is engaged in substantial and not isolated activity within Florida.
>
> This Court is authorized to exercise personal jurisdiction over Greatbatch because Greatbatch enjoys such numerous, continuous, significant, and systematic contacts with Florida that Greatbatch may fairly be regarded as at home in Florida.

*Id.* ¶¶ 137–39.   Plaintiff, in her capacity as personal representative, alleges claims for strict liability (Count IX) and negligence (Count X) against Greatbatch.   In her individual capacity, she also alleges a claim for loss of consortium (Count XIII).   *Id.* at 38–40, 43–44.

## III.    DISCUSSION.

   A.    <u>Greatbatch's Motion to Dismiss (Doc. No. 71)</u>.

      *1.    Legal Standard.*

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.   A court undertakes a two-step inquiry in determining whether it can exercise personal jurisdiction over a nonresident defendant.   *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).   First, the Court must determine whether the forum state's long-arm statute provides a sufficient basis for personal jurisdiction.   *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).   Second, if the Court finds that personal jurisdiction exists under Florida's long-arm statute, the Court "must determine whether sufficient minimum contacts exist between the defendant[] and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment."   *Id.* (internal quotation omitted).

A plaintiff claiming that the Court has personal jurisdiction over a nonresident defendant bears the initial burden of alleging sufficient facts in the complaint to establish a prima facie case of personal jurisdiction over the defendant.   *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).   "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict."   *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citation omitted).   If the defendant challenges jurisdiction by submitting affidavits containing specific averments contradicting the plaintiff's allegations in support of personal

jurisdiction, the burden shifts back to the plaintiff to produce evidence supporting the existence of personal jurisdiction. *United Techs.*, 556 F.3d at 1274. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

### 2.    *Florida's Long-Arm Statute.*

Greatbatch contends that the second amended complaint "lacks any factual predicate sufficient to establish a prima-facie basis for personal jurisdiction." Doc. No. 71, at 5.[6] Greatbatch does not explicitly address the provisions of Florida's long-arm statute, but asserts generally that Plaintiff cannot rely solely on a pure "stream of commerce" theory to support her claim that the Court has jurisdiction over Greatbatch. *E.g.*, *id.* at 8–9.

Plaintiff, on the other hand, contends that the Court may exercise specific personal jurisdiction over Greatbatch pursuant to Fla. Stat. § 48.193(1)(a)(6)(b). *See* Doc. No. 74, at 7.[7] She asserts that the following allegations of the second amended complaint are sufficient to establish a prima facie case of personal jurisdiction over Greatbatch under § 48.193(1)(a)(6)(b):

> Mrs. Lewis alleges that Greatbatch manufactured, produced, and distributed the defective lithium-ion battery that caused Mr. Lewis' Subject Unify Quadra to fail,

---

[6] Pinpoint citations to Greatbatch's motion to dismiss (Doc. No. 71) refer to the internal pagination, rather than the page numbers created by CM/ECF.

[7] "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [the forum state]," whereas "[g]eneral personal jurisdiction is based on a defendant's substantial activity in [the forum state] without regard to where the cause of action arose." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citations omitted). Although in the second amended complaint Plaintiff cites Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), (1)(a)(6), and (2) to support her assertion of personal jurisdiction over Greatbatch, in response to the motion to dismiss Plaintiff confines her arguments to asserting that the Court may exercise specific personal jurisdiction over Greatbatch pursuant § 48.193(1)(a)(6)(b). Because Plaintiff bears the initial burden of establishing a prima facie case of personal jurisdiction over the defendant, by her silence, Plaintiff tacitly concedes that the Court does not have personal jurisdiction (either specific or general) over Greatbatch under the remaining cited provisions. *See generally United Techs.*, 556 F.3d at 1274 (the plaintiff bears the initial burden of alleging sufficient facts in the complaint to establish a prima facie case of personal jurisdiction over the defendant). Accordingly, the undersigned has confined the analysis of Florida's long-arm statute to whether the Court can exercise specific personal jurisdiction over Greatbatch under § 48.193(1)(a)(6)(b).

> (Doc. 35, ¶¶ 46, 70, 210, 216), that Greatbatch improperly manufactured, produced, and distributed the battery such that it contained or formed lithium-ion clusters that caused the battery to short circuit and prematurely lose its charge, (*id.* at ¶¶ 60, 66, 67, 78, 210–212, 217–221), and that Greatbatch's defective battery injured Mr. Lewis and ultimately resulted in his death within Florida, (*id.* at ¶¶ 6–8, 55, 57, 58, 213, 222; Doc. 38-1).

*Id.*

The reach of Florida's long-arm statute "is a question of Florida law," and, thus, the Court is required to apply the statute "as would the Florida Supreme Court." *United Techs.*, 556 F.3d at 1274. "Florida's long-arm statute is to be strictly construed." *Sculptchair*, 94 F.3d at 627. Section 48.193(1)(a)(6)(b) provides:

> (1)(a)  A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury,
> . . .
>
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(1)(a)(6)(b).

To establish specific jurisdiction under § 48.193, a plaintiff must show an "affiliation, nexus, or substantial connection" between her claim and the defendant's conduct. *Cableview Comms. of Jacksonville Inc. v. TimeWarner Cable Southeast LLC*, No. 13-cv-306-J-34JRK, 2014 WL 1268584, at *7 (M.D. Fla. Mar. 27, 2014) (citations omitted). "Florida courts have held that the mere allegation that defective products left the defendant's control and ultimately reached consumers in Florida is insufficient to establish that the product was manufactured, distributed, or shipped 'in the

ordinary course of commerce.'"    *Seascape Phase II Ass'n, Inc. v. Chem. Specialties, LLC*, No. 3:16-cv-115/MCR/CJK, 2017 WL 3597511, at *3 (N.D. Fla. July 6, 2017) (collecting cases).    "Instead, the nonresident must have had at least some reason to anticipate that his product [would] reach another state in the ordinary course of interstate commerce."    *Id.* (citation and quotation marks omitted); *see also Moceri v. BJ's Wholesale Club, Inc*., No. 18-80979-CV, 2019 WL 2009248, at *2 (S.D. Fla. Jan. 11, 2019) ("[S]ubsection (6)(b) of Florida's long-arm statute confers jurisdiction over defendants whose 'products have been placed into the stream of commerce and there is a reasonable expectation that large numbers will be purchased here.'" (quoting *McHugh v. Kenyon*, 547 So. 2d 318, 319 (Fla. 4th Dist. Ct. App. 1989) (per curiam))).

Here, Plaintiff essentially argues that the Court can exercise personal jurisdiction over Greatbatch under § 48.193(1)(a)(6)(b) because Greatbatch manufactured a defective battery that was placed in a Unify Quadra and allegedly resulted in Mr. Lewis's death in Florida – *i.e.* a classic "stream of commerce" argument.    Doc. No. 74, at 7.    The undersigned finds Plaintiff's conclusory allegations and argument, without more, unpersuasive.    Plaintiff's second amended complaint does not allege that Greatbatch sold the subject lithium-ion battery in Florida, or that it knowingly sold the battery to St. Jude Medical, Inc. for use in a device that would be shipped to Florida.[8]    Nor has Plaintiff alleged that Greatbatch would have had some reason to anticipate that the subject lithium-ion battery would reach Florida in the ordinary course of interstate commerce.

To the contrary, in support of its motion to dismiss, Greatbatch has submitted a declaration stating that: (1) the battery at issue was designed and manufactured by Greatbatch for exclusive

---

[8]    Indeed, nowhere in the second amended complaint does Plaintiff allege where the Unify Quadra at issue was procured – nowhere in the complaint does it state where Mr. Lewis underwent implantation of the device, at which medical facility, by whom, and where the medical facility obtained the Unify Quadra that was ultimately implanted into Mr. Lewis.

supply to St. Jude Medical, Inc.; (2) Greatbatch manufactured the batteries in New York State and supplied them to St. Jude Medical, Inc. by delivering the batteries to Sylmar, California; Puerto Rico; and Malaysia; (3) Greatbatch did not manufacture the batteries in Florida, nor did it ship or supply the batteries to Florida; (4) from 2014 to 2018, only approximately 1.2% of Greatbatch's global sales were attributable to sales of Greatbatch products in Florida, none of which related to the battery identified in the second amended complaint; and (5) Greatbatch has no facilities or property in Florida, it does not design or manufacture products in Florida, and it only has a single employee in Florida who works remotely.   *See* Doc. No. 71-1.

Based on these uncontested averments, and in the absence of any contrary evidence from Plaintiff,[9] I recommend that the Court find that Plaintiff has failed to demonstrate that the Court has specific personal jurisdiction over Greatbatch under § 48.193(1)(a)(6)(b).   *Seascape Phase II Ass'n, Inc.* is instructive on this point.   There, the moving defendant was a Georgia wood treatment corporation who treated other defendants' roofing materials with a chemical formulation; the materials were then sold, distributed, and installed on multiple condominiums owned by the plaintiff.   The materials were defective at the time of the sale and had to be replaced.   Based on the uncontested averments of the moving defendant, the court found that the plaintiff had not demonstrated that personal jurisdiction over the wood treatment corporation was proper in Florida under Fla. Stat. § 48.193(1)(a)(6)(b).   Those averments included that the moving defendant had no resellers or distributors authorized to do business in Florida; it did not arrange for the shipping of the subject materials after treatment; it had no specific knowledge of the ultimate destination of the

---

[9] "When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents."   *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990) (citations omitted). Plaintiff submits no such affidavits, testimony, or documents here.

products; the other defendants delivered the materials to the moving defendant's facility in Georgia and picked up the products at the same Georgia facility; and the moving defendant did not have information regarding the ultimate destination of materials treated.

The court noted that the moving defendant had no reason to anticipate that the materials it treated would ultimately reach any state outside of Georgia through the ordinary course of commerce. The court also found that even though the materials were shipped throughout the Southeast, that did not amount to a purposeful act by the moving defendant directed to Florida; instead, the materials were not built to order for Florida customers; were not shipped directly to Florida; and there was no evidence that the moving defendant knew that the materials it treated would be sold outside of Georgia. Accordingly, the Court concluded that personal jurisdiction did not lie in Florida courts over the moving defendant under Fla. Stat. § 48.193(1)(a)(6)(b). *See Seascape Phase II Ass'n, Inc.*, 2017 WL 3597511, at *3–4.

As in *Seascape*, based on Greatbatch's uncontested averments, I recommend that the Court find that Plaintiff has failed to establish that jurisdiction over Greatbatch pursuant to Fla. Stat. § 48.193(1)(a)(6)(b) is proper. *See also Milligan v. State Farm Mut. Auto. Ins. Co.*, No. 6:16-cv-1889-Orl-28DCI, 2018 WL 3352933, at *5 (M.D. Fla. June 15, 2018) (finding plaintiff did not demonstrate any connection between his injury from allegedly unnecessary surgery and defendant's solicitations in Florida, as necessary under § 48.193(1)(a)(6)(a)), *report and Recommendation adopted*, 2018 WL 3348889 (M.D. Fla. July 9, 2018); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) ("[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida *only as those contacts related to the plaintiff's cause of action*." (emphasis added)).

As discussed below, I further recommend that the Court find that exercising personal jurisdiction over Greatbatch would violate due process.

3.    *Due Process*

In its motion to dismiss, Greatbatch argues that Plaintiff fails to allege facts sufficient to present a prima facie case of personal jurisdiction and, even if she had, the exercise of personal jurisdiction over Greatbatch would violate due process.  Doc. No. 71.  Greatbatch relies on the declaration of Tom Thomas in support.  *See* Doc. No. 71-1.  Greatbatch confines its arguments regarding due process to whether Greatbatch has purposely availed itself of the privilege of conducting business activities in Florida.  *See* Doc. No. 71, at 2, 7.[10]

In response, Plaintiff argues that "Greatbatch's meager evidentiary showing fails to refute" the allegations of the complaint.  Doc. No. 74, at 1, 8–10.  She asserts that "a company that places its products into the stream of commerce reasonably expecting them to reach consumers in Florida enjoys sufficient minimum contacts with the state to warrant personal jurisdiction."  *Id.* at 6–7.  She asserts that the exercise of personal jurisdiction over Greatbatch comports with due process because Greatbatch manufactured and supplied the defective battery that caused Mr. Lewis's death

---

[10] Greatbatch also argues that Plaintiff's second amended complaint fails to establish that the Court has general personal jurisdiction over it.  *See* Doc. No. 71, at 10–12.  Plaintiff does not address general personal jurisdiction in her response and confines her arguments to specific personal jurisdiction under the "stream of commerce" theory.  *See* Doc. No. 74, at 6–10.  Because it appears that Plaintiff has abandoned any argument that the Court may exercise general personal jurisdiction over Greatbatch, the undersigned does not further address general personal jurisdiction herein.  I note, however, that Greatbatch's arguments are well taken.  Doc. No. 71, at 11 (noting that Greatbatch does not design or manufacture products in Florida, has no Florida facilities, only one of its employees resides in Florida (from which she works remotely), and only approximately 1.2% of Greatbatch's global revenue from the last five years resulted from Florida sales).  *See generally Daimler AG v. Bauman*, 571 U.S. 117, 132 (2014) ("Although the placement of a product into the stream of commerce may bolster an affiliation germane to specific jurisdiction, we explained, such contacts do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant." (citation and quotation marks omitted)).

in Florida; moreover, Greatbatch manufactured and supplied the defective batteries in all of the recalled devices, which were distributed throughout the United States.   *Id.* at 8.

The Court applies a three-part test in determining whether exercising specific personal jurisdiction over the nonresident defendant comports with due process: "(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice."   *Louis Vuitton Malletier*, 736 F.3d at 1355 (internal citations and quotation marks omitted).   "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.   *Id.* (internal citations and quotation marks omitted).

For the Court to exercise specific personal jurisdiction over Greatbatch, Plaintiff must demonstrate that Greatbatch "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."   *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).   "In products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice.'"   *Id.*   In addition, "submission through contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* at 881 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).   "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general

rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 882.

I recommend the Court find that, based on the allegations of the second amended complaint, Plaintiff has failed to demonstrate that exercising personal jurisdiction over Greatbatch comports with due process. Plaintiff has failed to establish any connection between Greatbatch's limited contacts with Florida and its sale of the subject battery to St. Jude Medical, Inc. in New York and its related delivery of batteries to St. Jude Medical, Inc. in Sylmar, California; Puerto Rico; and Malaysia. From the allegations of the second amended complaint, it appears that St. Jude and/or Abbott, not Greatbatch, sold the Unify Quadra; Greatbatch only sold the batteries for the products solely to St. Jude Medical, Inc. *E.g.*, Doc. No. 35 ¶¶ 44–46. Besides the allegation that Mr. Lewis passed away in Florida due to a defect in the battery utilized in the Unify Quadra that he received, Plaintiff makes no further allegation regarding Greatbatch's efforts to target consumers in Florida.[11]

Moreover, Greatbatch relies on the declaration of Tom Thomas to refute the allegations of the second amended complaint. As detailed above, the declaration states that (1) the battery at issue was designed and manufactured by Greatbatch for exclusive supply to St. Jude Medical Inc.; (2) Greatbatch manufactured the batteries in New York State and supplied them to St. Jude Medical Inc. by delivering the batteries to Sylmar, California; Puerto Rico; and Malaysia; (3) Greatbatch did not manufacture the batteries in Florida, nor did it ship or supply the batteries to Florida; (4) from 2014 to 2018, only approximately 1.2% of Greatbatch's global sales were attributable to sales of

---

[11] To the extent that Plaintiff argues that Greatbatch also supplied batteries for all of the 250,000 recalled Unify Quadra devices, *see* Doc. No. 74, at 8, 9, nowhere in the second amended complaint does she allege where those devices were sold, shipped, or implanted, *see* Doc. No. 35. Inasmuch as Plaintiff argues that "Greatbatch notably fails to address whether it intends or expects its batteries to reach Florida consumers," this argument is equally unavailing. Plaintiff, not Greatbatch, bears the initial burden of pleading facts sufficient to demonstrate that personal jurisdiction over Greatbatch is proper. *See United Techs.*, 556 F.3d at 1274. Nowhere in the second amended complaint does Plaintiff allege that Greatbatch intends or expects its batteries to reach Florida consumers. *See* Doc. No. 35.

Greatbatch products in Florida, none of which related to the battery identified in the second amended complaint; and (5) Greatbatch has no facilities or property in Florida, it does not design or manufacture products in Florida, and it only has a single employee in Florida who works remotely. Doc. No. 71-1.   Plaintiff has not submitted any evidence to rebut these assertions.

"The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."   *J. McIntyre Mach.*, 564 U.S. at 882.   Thus, Plaintiff's reliance solely on a "stream of commerce" theory to argue that personal jurisdiction is warranted is unpersuasive.   *See id.* at 886 (citation omitted) (plurality opinion finding New Jersey lacked specific personal jurisdiction over the defendant where the plaintiff relied on (1) distributor agreeing to sell defendant's machines in United States; (2) defendant's officials attended trade shows in United States but not in New Jersey; and (3) four of defendant's products ended up in New Jersey—the defendant had no office in New Jersey, owned no property in New Jersey and did not pay taxes there, and defendant did not advertise in or send employees to New Jersey; finding that the facts "may reveal an intent to serve the U.S. market, but they do not show that [the defendant] purposefully availed itself of the New Jersey market."); *Helicopteros*, 466 U.S. at 417 ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *see also Smith v. Poly Expert, Inc.*, 186 F. Supp. 3d 1297, 1305 (N.D. Fla. 2016) ("Farmers and Poly Expert have not shown that Willow Ridge sold its products to Poly Expert with the expectation or knowledge that those products would end up incorporated into mulch that would be sold in Florida.   So even assuming that the most lenient version of a minimum contacts theory should be used, Willow Ridge lacks minimum contacts with Florida."); *Gifford v. Thinking Outside,*

*LLC*, 506 F. Supp. 2d 1104, 1108 (N.D. Fla. 2007) (finding personal jurisdiction lacking over pallet manufacturer because "introduction of its pallets into Florida resulted from the unilateral activities of the other named defendants in this action.")

Based on the foregoing, Plaintiff has failed to establish that the Court may properly exercise personal jurisdiction over Greatbatch.   Therefore, it is unnecessary for the Court to address Greatbatch's alternative contention that the second amended complaint fails to state a claim.   *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims . . . ."); *see also Lamb v. Charlotte Cty.*, 429 F. Supp. 2d 1302, 1306 (M.D. Fla. 2006) ("[I]f the Court concludes that jurisdiction is absent, the Court must not proceed on the merits of the case.").   For these reasons, it is respectfully recommended that the Court grant Greatbatch's motion to dismiss for lack of personal jurisdiction (Doc. No. 71).

    B.    Motion to Sever/Transfer (Doc. No. 75).

Federal Rule of Civil Procedure 21 provides, in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party.   The court may also sever any claim against a party."   Whether to sever a claim or party under Rule 21 lies within the discretion of the district court.   *See McCullough v. Royal Caribbean Cruises, Ltd*., 268 F. Supp. 3d 1336, 1352 (S.D. Fla. 2017) ("Courts have 'considerable discretion' to sever a claim from an action pursuant to Rule 21." (citing *Estate of Amergi ex rel. Amergi v. Palestinian Auth*., 611 F.3d 1350, 1367 (11th Cir. 2010))).   "When addressing a question of severance, the court must determine whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together [or separately], and whether any party would be prejudiced if they did."   *Clay v. AIG Aerospace Ins.*

*Servs., Inc.*, 61 F. Supp. 3d 1255, 1271 (M.D. Fla. 2014) (citations and internal quotation marks omitted).

28 U.S.C. § 1631 is titled "Transfer to cure want of jurisdiction" and provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

"Transfer is mandatory, but only if in the interest of justice." *Howe v. Samsung Elecs. Am., Inc.*, No. 1:16-cv-386-RH/GRJ, 2018 WL 2212982, at *5 (N.D. Fla. Jan. 5, 2018).

Plaintiff asks that, should the Court determine that it cannot exercise personal jurisdiction over Greatbatch, the Court sever the claims against Greatbatch from the second amended complaint pursuant to Rule 21 and transfer such claims to the United States District Court for the Western District of New York, Buffalo Division, under § 1631. Doc. No. 75. She primarily relies on her predicament that her claims would be time-barred should she be required to refile her case against Greatbatch in a different jurisdiction. *Id.* at 4–5.

Greatbatch acknowledges that the applicable statute of limitations may be relevant in the Court's consideration of Plaintiff's request to *transfer* this case. Doc. No. 76, at 3. However, Greatbatch contends that *severing* Plaintiff's claims against Greatbatch would be improper because it would result in a duplicative action in another court, which would involve the same issues to be litigated, the same discovery to be had, and the same damages sought. Doc. No. 76, at 4–5.[12]

---

[12] According to Greatbatch:

> The claims asserted against Greatbatch arise from the same series of events as the claims asserted against the St. Jude defendants; it is St. Jude's medical device at the center of this litigation. Thus, if Plaintiff's motion were to be granted, the same facts and legal issues would then have to be litigated in both the Western District of New York and in the Middle District of Florida. Whether Mr. Lewis's Device was defective necessarily would include

As an initial matter, there appears to be a split of authority on whether severance of part of a case against one or more parties under Rule 21, and thereafter transference of such claims against the severed parties to a different jurisdiction under § 1631, is proper.  *Compare, e.g., D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) ("[W]e have interpreted section 1631 to permit the transfer of all or only part of an action."), *United States v. County of Cook, Ill.*, 170 F.3d 1084 (Fed. Cir. 1999) (approving transfer of some, but not all, claims), *and FDIC v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996) (finding transfer appropriate only after a Rule 21 severance), *with Schrader v. Biddinger*, 633 F.3d 1235, 1249–50 (10th Cir. 2011) (stating that the court was "aware of no authority even permitting, much less requiring, a district court to unilaterally split up an action and transfer the resultant components to diverse jurisdictions under the auspices of § 1631").

Courts are also divided on whether § 1631 applies only to cases involving lack of subject matter jurisdiction, or whether transfer is also proper under § 1631 for cases involving lack of personal jurisdiction.  *Compare, e.g., SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) ("[T]he legislative history of section 1631 provides some reason to believe that this section authorizes transfers only to cure lack of subject matter jurisdiction."), *with Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (concluding that § 1631 "applies to federal courts

---

litigating whether its components—including the 2850 battery—were defective, and a New York litigation would undeniably include the same evidence and witnesses, and a determination of the same legal issues as the Florida litigation.  More specifically, because the 2850 battery, as a component of the Device, is subject to federal preemption (the same as the Device itself), the development of facts and issues regarding, for example, St. Jude's pre-market approval process and application, applicable FDA regulations governing St. Jude's manufacturing processes and reporting obligations, and the FDA's recall would be required in both jurisdictions.  Thus, the proposed New York and current Florida actions would be patently duplicative.

Doc. No. 76, at 4–5.

identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction").

It does not appear that the Eleventh Circuit Court of Appeals has weighed in on either of these issues. *See McCullough*, 268 F. Supp. 3d at 1352 (noting that the Eleventh Circuit has not ruled on severance issue under Rule 21, finding that "individual claims against individual defendants may theoretically be transferred to a new venue under Section 1631"); *Edwards v. Leach Int'l*, No. 8:14-cv-1326-T-36MAP, 2015 WL 1781835, at *4 & n.3 (M.D. Fla. Apr. 20, 2015) (noting that neither the Eleventh Circuit nor the United States Supreme Court has addressed the scope of the term "jurisdiction" under § 1631). The federal district courts in Florida to have addressed these issues, however, appear to agree that § 1631 applies to personal jurisdiction as well as subject matter jurisdiction, and that the Court may sever a claim against a party under Rule 21, and thereafter transfer such severed claim under § 1631. *See, e.g.*, *Clay*, 61 F. Supp. 3d at 1272; *Edwards*, 2015 WL 1781835, at *4; *McCullough*, 268 F. Supp. 3d at 1352; *see also Howe*, 2018 WL 2212982, at *5. I find these cases persuasive here.

However, issues remain as to whether Plaintiff's claims against Greatbatch should, in the Court's discretion, be severed and whether, after severance, transference of the severed claims against Greatbatch to the Western District of New York, Buffalo Division, would be "in the interest of justice." *See id.* Both parties make valid arguments in this regard. Plaintiff's argument centers on the fact that her claim against Greatbatch would be time-barred should the Court decline to sever the claim and transfer the portion of the action against Greatbatch to the Western District of New York. Doc. No. 75. *See Clay*, 61 F. Supp. 3d at 1272 (finding that although severance and transfer of certain defendants would burden the judicial system and disserve judicial economy, that "burden pales in comparison" to dismissal of those certain defendants outright because the plaintiffs' claims

would have been time-barred by the applicable statute of limitations).  Greatbatch, on the other hand, points to authority supporting its request for the Court to decline to sever and transfer the claims against Greatbatch on the grounds that it would result in the same facts and issues being litigated in multiple judicial districts.  Doc. No. 76.  *See McCullough*, 268 F. Supp. 3d at 1352 (finding that "[s]uch duplicitous litigation is not in the interest of justice." (citing *Kennedy v. Phillips*, No. 11-1231, 2012 WL 261612, at *4 (W.D. Wash. Jan. 23, 2012))).

In my view, Plaintiff has the better of the arguments based on the facts of this case.  I acknowledge Greatbatch's contention that severance and transfer are two separate issues.  However, whether to sever a claim is within the broad discretion of this Court, and the considerations include efficiency and judicial economy as well as prejudice to the parties.  *See Clay*, 61 F. Supp. 3d at 1271 (citation omitted).  Here, Greatbatch makes no convincing argument that it would be prejudiced by severance of Plaintiff's claims against it.[13]  And, in my view, the prejudice to Plaintiff by dismissing her claims against Greatbatch outright outweighs the considerations of judicial economy because it would effectively be an adjudication on the merits of Plaintiff's claim against Greatbatch due to the expiration of the statute of limitations.  *See id.* (concluding same);[14] *see also Edwards v. Leach Int'l*, No. 8:14-cv-1326-T-36MAP, 2015 WL 1781835, at *3 (M.D. Fla. Apr. 20, 2015).

---

[13] To be sure, Greatbatch does not argue that personal jurisdiction over it would not lie in the Western District of New York.  Greatbatch also does not argue that the presence of St. Jude/Abbott is essential to its ability to defend itself against Plaintiff's claims.  Indeed, should Greatbatch feel that it is essential that Plaintiff's claims against it be tried in conjunction with Plaintiff's claims against St. Jude/Abbott, Greatbatch could instead submit to the jurisdiction of this Court.  The undersigned is also aware that if the claims are tried separately, the parties may come to an agreement regarding the availability of discovery from the Florida case being available in a companion case in New York, and vice versa, thereby ameliorating any duplication of discovery and other litigation efforts.

[14] Greatbatch's contention that the Court in *Clay* conflated the requirements of severance and transfer is unpersuasive.  *See* Doc. No. 76, at 4 n.2.  The Court in *Clay* explicitly addressed Rule 21 and severance considerations as well as Section 1631 and considerations regarding transfer.  Greatbatch also argues that the *Clay* Court erred in finding the statute of limitations issue dispositive in that case.  In my view, however,

The expiration of the statute of limitations issue is also relevant to the question of transfer. "[D]istrict courts are strongly encouraged to transfer actions in cases such as this one where personal jurisdiction is lacking over a defendant and there is a reasonable probability that the plaintiff's claim would be time-barred if it were renewed in another court." *Clay*, 61 F. Supp. 3d at 1271–72 (citing *ITT Base Servs. v. Hickson*, 155 F.3d 1272, 1276 (11th Cir. 1998); *Peavy v. Klausner*, No. 8:11-cv-0508-T-27EAJ, 2011 WL 3841633, at *5 (M.D. Fla. Aug. 3, 2011)). That is the case here.[15] Accordingly, I recommend that the Court find that, in its discretion, severance of Plaintiff's claims against Greatbatch is proper, and that transfer of Plaintiff's claims against Greatbatch to the Western District of New York, Buffalo Division, is in the interest of justice. *See id.*

## IV. RECOMMENDATIONS.

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that the Court:

---

the statute of limitations issue, while maybe not in all cases dispositive, is relevant to both the issues of severance and transfer. Finally, Greatbatch's reliance on *McCullough* to state that *Clay* was wrongly decided is equally unavailing. Neither *Clay* nor *McCullough* are binding on the presiding District Judge. In essence, to take Greatbatch's argument to its logical conclusion, the Court would rarely or never have discretion to sever one defendant from a multi-defendant action based on its argument that duplicate litigation would result. This goes against the general premise that this Court has broad discretion to sever claims and parties under Rule 21. *See Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010) (noting district courts have "considerable discretion" regarding whether to sever claims under Rule 21).

[15] I note that Greatbatch argues that transfer is not in the interests of justice because Plaintiff had no "perfectly understandable reason" to believe that the Court had personal jurisdiction over Greatbatch, and "Plaintiff knew Greatbatch was at home in New York, not in Florida." Doc. No. 76, at 8. Some courts have rejected this very argument. *See Edwards v. Leach Int'l*, No. 8:14-cv-1326-T-36MAP, 2015 WL 1781835, at *4 (M.D. Fla. Apr. 20, 2015) ("[T]here is no requirement that, to obtain a transfer under 28 U.S.C. § 1631, a plaintiff must demonstrate that he or she brought the claim in the initial forum for 'very understandable reasons.'"). Moreover, the undersigned disagrees with Greatbatch's contentions. While perhaps misguided, the undersigned does not find that Plaintiff's filing of this matter in this Court against all of the named Defendants, including Greatbatch, was "patently unreasonable." *See Clay*, 61 F. Supp. 3d at 1272 n.6. To be sure, Plaintiff claims that the product and component parts at issue resulted in the death of Mr. Lewis in Florida. And regardless, what Greatbatch's argument in essence concedes is that Plaintiff could have (or should have) filed duplicate actions against Greatbatch and Abbott/St. Jude in different jurisdictions in the first place.

1. **GRANT in part and DENY in part** Greatbatch Ltd.'s Dispositive Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 71). Dismiss Greatbatch Ltd. from this case based on lack of personal jurisdiction, and **DENY** the Motion in all other respects;

2. **GRANT** Plaintiffs' Renewed Alternative Motion to Sever Defendant Greatbatch Ltd. and Transfer Plaintiffs' Claims Against Defendant Greatbatch Ltd. to the United States District Court for the Western District of New York (Doc. No. 75);

3. **SEVER** Plaintiff's claims against Greatbatch from the second amended complaint; and

4. **TRANSFER** Plaintiff's claims against Greatbatch to the Western District of New York, Buffalo Division.

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on February 5, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record